Antone Santos
vs.  W. C. A. No. 1519.
Joseph McCormick

## DECISION.

### September 21, 1933.

WALSH, J. This is a petition by Antone Santos, an employee, against Joseph McCormick, employer, to compel the performance of an agreement entered into under the Workmen's Compensation Act approved by the Commissioner of Labor on November 21, 1930, whereby the employer was to pay compensation at the rate of $12.15 a week for and during the term of total incapacity or until otherwise terminated, according to the purpose of the Workmen's Compensation Act, to the employee, Antone Santos.

This compensation has been paid up to and including the date of this petition, which was filed in this Court on January 27, 1933. The answer of the respondent admits that the employee was injured in the course of his employment on October 23, 1930, but sets up that the petitioner is not still totally incapacitated and unable to perform his former occupation, nor any other occupation, because of the injury which arose out of and in the course of his employment and out of this particular accident on October 27, 1930, and that the employee has ceased to be totally incapacitated, and asks us to terminate the future weekly compensation payments.

The facts in this case show that this man went to the hospital immediately after this accident and was a private patient, apparently, of Dr. Maiello; that he was in St. Joseph's Hospital during the first week and, while he was being treated by Dr. Maiello, apparently in conjunction with the staff of the hospital, Dr. Horan was called in. Dr. Horan states that the only major complaints that were made at that time by this man were about the fractured ribs that he had. Now the man says that at that time he had an injury to his left knee and that at that time he also had trouble with his stomach, distension of the abdomen, formation of gas, and pain, and so forth. He also told us that after the fractures healed, due to the fact that they had abnormal callouses around them, and possibly injury to a nerve there, he had difficulty in breathing. Dr. Horan does not recall any complaint from this man during the first week of his stay in the hospital in 1930 except about the fractured ribs and pain in his chest. The ribs healed and the petitioner's own witness, Dr. Boyd, says that the union was good and the callouses were not abnormal, and unless some nerve was injured. there is no reason to fear anything from these fractured ribs so far as the shortness of breath and inability to breathe are concerned.

The man stayed at the hospital for some time, he says two weeks, then he went home. He hasn't received any constant medical treatment since that time. It has been sporadic, at intervals. Dr. Lobo told us that this man has a traumatic arthritis in his left knee and he has abnormal callouses in his chest; that the abnormal callouses in his chest are, without doubt, the reason for his difficulty in breathing, and that the man is permanently injured. In his opinion, the man will never be able to have full and complete use of his leg from now on. Dr. Lobo says that this arthritis is traumatic arthritis because it appears in one joint and is absent in all the other joints of the body, and he said it was logical to assume, by reason of that, that it is a traumatic arthritis.

Dr. Horan saw this man in May and June, 1933. We are inclined to believe that Dr. Horan has told us the truth as he saw it. He said that he decided

to put this man under an anesthetic, not telling the man, and his reasons were, first, because he wanted, if there was any atrophy in that tendon, any tightening, to put the man under the anesthetic so that he could stretch that tendon and stretch the muscle without any pain or discomfort to the man; and the second reason he wanted to put him under the anesthetic, he wanted to see how that knee behaved when the man couldn't exercise positive control over it. He wanted to see whether, when the movements were involuntary, he would have any difficulty in moving that knee. Dr. Horan said he didn't find it necessary to stretch any tendon or stretch any muscle, and when the patient was under the anesthetic his left leg moved with equal facility and within the same radius that the right knee did. Dr. Horan also states that this man is not well now. I don't think he is. I think that this man's knee—either due to ignorance on his part or to the fact that the doctors did not impress it upon him—has become stiffened up, but I think it is because they didn't tell him, or, if they did tell him, that he didn't understand them, that he hasn't exercised that knee the way he should. I think the great preponderance of the testimony is that he has got to the age where a little arthritis is quite common. After a man passes his fortieth birthday, the doctors are liable to find anything abnormal. These little spines of the bones are perfectly normal at his age. I don't think it is due to this particular injury that they are there. I don't think that this arthritis, if there is any arthritis there, has been shown to have been caused by this injury, but all doubts in these cases must be resolved in favor of the petitioner. It is the purpose of the act to see that the employee is taken care of. My opinion, therefore, is that this man could have, by applications and the use of his knee, made it all right long before this, but I am going to give him the benefit of the doubt. I think now he knows that he has got to get that knee in shape. He has got to drop that cane and get about without it, and even though he does get a twinge of pain, he has got to keep at it. He can't, because he gets a twinge of pain in that knee, lie down on the job and go home and weep over it. He has got to do his best to get that knee back into condition and he has got to flex that leg and keep walking. I think that I will give him compensation for a reasonable time so that he can adjust himself to those conditions. I am going to give him ten weeks'. compensation from now on. At the end of that time the compensation shall cease. At the end of 10 weeks he ought to be able to get around.

For petitioner: Dominique S. Pavon.

For respondent: Gardner, Moss & Haslam.